IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| DEBBIE FLO, INC., | : | Civil No. 13-2650 (RBK/JS) |
| Plaintiff, | : | **OPINION** |
| v. | : | |
| KEVIN SHUMAN, | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Debbie Flo, Inc. ("Plaintiff") to terminate maintenance and cure, or in the alternative to suspend maintenance until advances are recouped. For the reasons expressed herein, Plaintiff's motion will be **GRANTED IN PART, DENIED IN PART**.

**I.   BACKGROUND**

This action arises from an injury sustained by Kevin Shuman, a commercial fisherman, in October, 2011, while working in the employment of Plaintiff, a commercial fishing enterprise. On October 7, 2011, while working aboard the F/V Miss Laura Louise, Shuman complained of stomach pain and a discharge from his navel. He departed the vessel on his own the following day, and was diagnosed with a hernia on October 9, 2011. Several days later, Shuman sought medical treatment for a shoulder injury that he claimed to have sustained while working at sea for Plaintiff. Although Plaintiff contends that Shuman's shoulder injury was not sustained at sea,

Plaintiff's insurer began paying maintenance and cure. In addition to maintenance in the amount of $25 per day, the insurer also paid Shuman $50 per day as an advance.

Shuman eventually required two surgical procedures for his shoulder condition, and was also diagnosed with lymphedema, which is a condition involving swelling of the tissue in the chest. Treatment for both of these conditions as well as the hernia were paid for by Plaintiff's insurer. Plaintiff's insurance coverage has evidently now been exhausted, and Plaintiff has moved for a declaratory judgment that no further cure is owed for any treatment of the lymphedema. Plaintiff also seeks permission to apply the advance payments to Shuman as a credit against its future maintenance obligations.

## II. DISCUSSION

Seamen are entitled to receive maintenance and cure from the vessel owner when they are injured while in the course of their duties at sea. O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 41-42 (1943). Maintenance is "the living allowance for a seaman while he is ashore recovering from injury or illness," while cure "is payment of medical expenses incurred" in treating the injury or illness. Deisler v. McCormack Aggregates, Co., 54 F.3d 1074, 1079 (3d Cir. 1995). Maintenance and cure obligations are not statutory, but rather have been recognized by maritime law "[f]rom its dawn," dating at least back to the twelfth century. O'Donnell, 318 U.S. at 41; see also Ritchie v. Grimm, 724 F. Supp. 59, 61 (E.D.N.Y. 1989) (tracing these obligations back to the Laws of Oleron, an ancient code of maritime law). Maintenance and cure obligations are owed without regard to fault on the part of the shipowner or the seaman. Barnes v. Andover Co., L.P., 900 F.2d 630, 633 (3d Cir. 1990).

Maintenance and cure payments are owed until the seaman is cured or reaches maximum cure, also called maximum medical improvement ("MMI"). Deisler, 54 F.3d at 1079. MMI is

the point at which the seaman is either cured, or at which no further improvement in the seaman's medical condition is reasonably expected. O'Connell v. Interocean Mgmt. Corp., 90 F.3d 82, 84 (3d Cir. 1996). The question of whether an injured seaman has reached MMI is a "medical rather than legal question." Halcomb v. Kimberly Clark Tissue Co., Civ. No. 99-1092, 2000 WL 1802071, at *1 (S.D. Ala. May 31, 2000) (citing Breese v. AWI, Inc., 823 F.2d 100, 104 (5th Cir. 1987)). Pre-trial motions relating to maintenance and cure "should be treated as something similar to a motion for summary judgment." McNeil v. Jantran, Inc., 258 F. Supp. 2d 926, 930 (W.D. Ark. 2003). Further, a medical determination that "terminates the right to maintenance and cure . . . should be unequivocal." Tullos v. Res. Drilling, Inc., 750 F.2d 380, 388 (5th Cir. 1985).

Like summary judgment, the Court can thus grant such a motion only if the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. Id. at 255; Matsushida, 475 U.S. at 587.

**A. Lymphedema**

Plaintiff first seeks a declaratory judgment that it is not responsible for any further cure related to Shuman's lymphedema, which is a disorder of the lymphatic system characterized by fluid retention and swelling. See Pl. Mot. at 7. Shuman's treatment for this condition evidently consists of regular visits to a specialist, and the purchase of compression garments, which must be regularly renewed. Plaintiff argues first that lymphedema is incurable, and thus Shuman has already reached MMI with respect to this condition. Plaintiff also argues that the lymphedema is not related to any injury sustained at sea. See id. at 7-8.

Plaintiff seeks to support its argument that the lymphedema is unrelated to any injury sustained at sea by referencing an affidavit by Shuman's prior attorney, who indicated that "[a]t this point, in February, 2013, there was no viable evidence in the medical records obtained by [Shuman's attorneys] to demonstrate that the lymphedema condition was in any way caused by the surgical repair to the rotator cuff performed in December 2011 . . . ." Aff. of Stanley Gruber, ¶ 10 (ECF Doc. No. 12, Ex. 3).[1] It would be improper for the Court to consider this affidavit, as it is not based upon personal knowledge. See Fed. R. Civ. P. 56(c)(4) (affidavits supporting summary judgment motions must be based upon personal knowledge). Further, as Shuman points out, one of his treating physicians indicated in a report that the lymphedema was "secondary to most likely right rotator cuff surgery." Def. Opp'n Ex. 11; see also Def. Sur-Reply, Ex. 3 (orthopedic notes indicating that right chest wall swelling may be relatable to Shuman's shoulder surgery). The issue of whether the lymphedema resulted from Shuman's

---

[1] This affidavit was submitted in the context of explaining why Shuman's previous attorney, Stanley Gruber, moved to withdraw as counsel. Evidently, Shuman believed that his lymphedema resulted from his shoulder surgeries and wanted to pursue a medical malpractice action against the doctors who operated on his shoulder. Aff. of Stanley Gruber, ¶¶ 10-12. Mr. Gruber did not wish to file a medical malpractice claim on Shuman's behalf, and this disagreement resulted in what Mr. Gruber characterized as irreparable damage to the attorney-client relationship. Id. ¶ 17. The fact that the affidavit related to the merits of a potential medical malpractice action suggests that Mr. Gruber's opinion is far from dispositive as to whether an action for maintenance and cure is viable for the lymphedema.

4

shoulder injury that he claims he sustained at sea is thus a classic question of fact. There is certainly no "unequivocal" medical evidence that the lymphedema is unrelated to the shoulder injury allegedly sustained at sea. Tullos, 750 F.2d at 388. Courts should resolve ambiguities and doubts "in favor the seaman." Vaughan v. Atkinson, 369 U.S. 527, 532 (1962). The causal relationship of the lymphedema to Shuman's shoulder injury certainly rises to the level of an ambiguity or doubt.

Plaintiff also argues that MMI has been reached with respect to Shuman's lymphedema. It is the vessel owner's burden to prove that MMI, or maximum cure, has been attained by the injured seaman. Smith v. Delaware Bay Launch Serv., Inc., 972 F. Supp. 836, 848 (D. Del. 1997). Plaintiff has submitted a reference to an internet article in support of its argument that lymphedema is incurable, and thus MMI has already been reached. See Pl. Mot. at 7. The Court cannot accept this article as the basis for ruling as a matter of law that Shuman has reached MMI. See, e.g., Griego v. Barton Leasing, Inc., Civ. No. 08-2325, 2010 WL 618279, at *3 (D. Colo. Feb. 19, 2010) (articles from the internet are not admissible evidence); St. Clair v. Johnny's Oyster & Shrimp, Inc., 76 F. Supp. 2d 773, 775 (S.D. Tex. 1999) ("evidence procured off the Internet is adequate for almost nothing . . . ."). A showing that MMI has been reached is Plaintiff's burden, and Plaintiff cannot meet it by displaying an internet article written by someone who has not examined Shuman. Established law indicates the need for an individual diagnosis as to the injured seaman's condition. See O'Connell, 90 F.3d at 84 (payment of cure continues until "his condition is diagnosed as permanent and incurable.") (emphasis added). There is nothing in the record indicating that such a diagnosis has been made by any doctor as to

Shuman's condition. Thus, the Court cannot enter a declaratory judgment that no further cure is owed for lymphedema.[2]

**B. Advance Payments**

Plaintiff also requests a declaration allowing it to apply advances paid to Shuman against its current maintenance obligations. Plaintiff indicates that prior to the exhaustion of its insurance coverage, its insurance carrier paid $50 per day on its behalf as an advance, in addition to $25 per day, which it states was the actual amount required for Shuman's maintenance. See Aff. of Brian McEwing, ¶ 7. Shuman evidently does not dispute that advance payments in the amount of $50 per day were made to him for some period of time. The total amount of the advances is alleged by Plaintiff to be $36,070.00. Id. ¶ 18. It is unclear why the insurance carrier issued the advance payments in addition to daily maintenance.

Shuman argues that Plaintiff should not be permitted to set off the advance payments made at this time, although he concedes that Plaintiff would be able to set off the advances against any recovery he may ultimately obtain on his Jones Act and seaworthiness claims.[3] Def. Sur-Reply at 6. Plaintiff disputes that Shuman is entitled to any recovery under these causes of action, and argues that if it is not entitled to set off the advances against its continuing maintenance obligations, it may never recover the advances.

---

[2] The Court points out that this holding should not be interpreted as deciding that Shuman is entitled to maintenance and cure in connection with him lymphedema. As Plaintiff recognizes, it may stop the payment of maintenance and cure, but must accept the risk that it could be subject to payment of damages if it is later determined that it did so wrongly. See Pl. Mot. at 5; Atlantic Sounding Co. v. Townsend, 557 U.S. 404, 417, 422 (attorney's fees are only awarded for the callous, willful, and persistent refusal to pay maintenance and cure, while punitive damages are only awarded for the willful or wanton failure to comply with a duty to pay maintenance and cure). The ultimate determination as to the merits of a maintenance and cure claim, when joined with a Jones Act claim, is be made by a jury. Fitzgerald v. United States Lines Co., 374 U.S. 16, 21 (1963).

[3] The Jones Act allows a seaman to recover "for personal injuries suffered in the course of his or her employment in an action at law," under traditional negligence principles, while a plaintiff can recover under a seaworthiness claim where the vessel owner breaches the "absolute and non-delegable duty to provide a seaworthy ship." Fasold v. Del. River & Bay Auth., 117 F. App'x 836, 838 (3d Cir. 2004). Shuman has filed a complaint seeking to recover under these causes of action, and asserting his own affirmative claims for maintenance and cure. See Complaint, Shuman v. Lauren Kim, Inc., Civ. No. 14-251 (D.N.J. filed Jan. 13, 2014).

Neither party cites law that is directly on point as to this issue. Generally, vessel owners are not permitted to recover overpayments of maintenance from seamen. See Boudreaux v. Transocean Deepwater, Inc., 721 F.3d 723, 727 n.15 (5th Cir. 2013); Dise v. Express Marine, Inc., 651 F. Supp. 2d 457, 470 (D. Md. 2009). Shuman argues that by extension, Defendant should not be entitled to an offset, either. However, some courts have indicated that it is appropriate for an employer to set off payments of supplemental benefits paid by the employer's insurer against maintenance and cure obligations. See Haughton v. Blackships, Inc., 462 F.2d 788, 791 (5th Cir. 1972) (set-off "was properly allowed" where an employee receives benefits as a result of the employer indemnifying "itself against its possible legal liabilities for payment of maintenance and cure."); Kirk v. Allegheny Towing, Inc., 620 F. Supp. 458, 462 (W.D. Pa. 1985) ("Many courts have permitted set off where a seaman received equivalent coverage from another source. . . ."). Further, courts have permitted employers to set off overpayments against future obligations under the Longshore and Harbor Worker's Compensation Act ("LHWCA"). See Chenevert v Massman Construction Co., Civ. No. 10-113, 2012 WL 7070423, at *3 (N.D. Miss. July 17, 2012). Such set-offs have been allowed under the LHWCA, even though employees covered by the LHWCA cannot be made to repay overpayments or wrongful payments, just as courts have refused to compel injured seamen to repay maintenance out of their own pockets. Id. Although Shuman correctly observes that the LHWCA is a statutory remedy, unlike maintenance obligations, he has set forth no reason why this Court should draw a distinction between the two schemes as to an employer's ability to set off advances or overpayments.

Further, the principles of law that prohibit recovery of overpayments do not mandate that offsets are also prohibited. One of the primary rationales for prohibiting recovery is that the

7

employee may have already spent the money, and it would be a hardship to force him to repay it. Kirk, 620 F. Supp. at 462-63. That is not the case here, as Plaintiff demands no money back from Shuman. By characterizing the relevant payments as advances, evidently both sides realized that the payments were in addition to what was strictly owed as maintenance. To "advance" means a "payment beforehand . . . an anticipatory payment." Oxford English Dictionary (3d ed. 2011). Thus, both sides evidently understood, or should have understood, that the advance payments of $50 per day anticipated satisfaction of some future liability owed to Shuman. While Shuman distinguishes many of the cases cited by Plaintiff, he has pointed to no law indicating that a set-off is improper, and the Court does not believe it would inequitable to allow the advances to be used to satisfy Plaintiff's present maintenance obligations to Shuman.

While, as the Court observes, the reason for the advance payments is unclear, the possibility of receiving advances of maintenance payments evidently inures to the benefit of an injured seaman, who is able to receive compensation sooner rather than later. As a policy matter, holding that advances may not be later offset may chill any vessel owner or insurer from issuing advance payments to an injured seaman. This Court recognizes that "gratuitous payments" made to injured seamen, as part of an attempt to achieve a favorable settlement, are generally not to be credited against maintenance obligations. See Clifford v. Mt. Vernon Barge Serv., 127 F. Supp. 2d 1055, 1059 (S.D. Ind. 1999) (citing Harper v. Zapata Off-Shore Co., 741 F.2d 87, 89 (5th Cir. 1984)). While no documents have been submitted that that might help the Court determine what stipulations or explanations, if any, came along with the advances in question, evidently Shuman agrees that they were not gratuitous, as he does not contest their status as advances, and he concedes that they would be set off against any Jones Act recovery.[4]

---

[4] While Shuman's prior attorney indicated in his affidavit that "[n]o reasonable person would suggest that" the necessities of life could be obtained "on $25 per day," Shuman has not moved to increase the amount of his

### III. CONCLUSION

For the reasons stated herein, Plaintiff's motion will be **GRANTED IN PART**. The motion is **DENIED** as to Plaintiff's request for a declaratory judgment that it owes no more cure for Shuman's lymphedema, and **GRANTED** as to its request for a declaration indicating that advance payments made to Shuman may be set off against its maintenance obligations. An accompanying Order shall issue.

Dated: 02/05/2014                                                                 /s/ Robert B. Kugler
                                                                                          ROBERT B. KUGLER
                                                                                          United States District Judge

---

maintenance payments. See Aff. of Steven Barry ¶ 30. He is free to file a motion seeking to increase past and future maintenance payment if he can document that his maintenance costs exceed $25 per day, and that his maintenance costs are "reasonable." See Hall v. Noble Drilling, Inc., 242 F.3d 582, 589 (5th Cir. 2001) ("A seaman is entitled to the reasonable cost of food and lodging in his locality, provided that he actually spends that amount on his upkeep"); Mayne v. Omega Protein, Inc., 370 F. App'x 510, 516 (5th Cir. 2010) (Courts may order retroactive increases in maintenance payments if warranted); Saco v. Tug Tucana Corp, 483 F. Supp. 2d 88 (D. Mass. 2007) (maintenance payments can be adjusted through a pretrial motion where appropriate).